Patrick M. Flatley
United States Bankruptcy Judge
**Dated: Friday, September 30, 2011 9:52:16 AM**

# UNITED STATES BANKRUPTCY COURT
## FOR THE NORTHERN DISTRICT OF WEST VIRGINIA

| | | |
|---|---|---|
| IN RE: | ) | |
| | ) | |
| JAY DEE HIXSON, | ) | Case No. 09-bk-814 |
| | ) | |
| Debtor. | ) | Chapter 13 |
| | ) | |
| JAY DEE HIXSON, | ) | |
| | ) | |
| Plaintiff | ) | |
| | ) | |
| v. | ) | Adv. Proc. No. 09-ap-42 |
| | ) | |
| HSBC Mortgage Services, Inc., | ) | |
| | ) | |
| Defendant. | ) | |

## <u>MEMORANDUM OPINION</u>

Jay Dee Hixson (Mr. "Hixson") seeks entry of summary judgment on his four-count complaint to void the loan and deed of trust executed between him and HSBC Mortgage Services, Inc. ("HSBC"). Mr. Hixson asserts that the loan and deed of trust are void on the grounds that the origination of the loan violated the West Virginia Residential Mortgage Broker, Lender, and Servicer Act, W.Va. Code § 31-17-1, *et seq* (the "Act").

HSBC seeks entry of summary judgment on the grounds that: (1) the Act is preempted by 11 U.S.C. § 1322(b)(2) of the Bankruptcy Code; (2) the Act does not permit courts to void the loan and the deed of trust securing the repayment obligation; and (3) the undisputed facts do not establish that the loan was originated in willful violation of the Act.

For the reasons stated herein, the court will grant in part and deny in part Mr. Hixson's motion for summary judgment. HSBC's motion for summary judgment will be denied.

1

## I.  STANDARD OF REVIEW

Summary judgment is appropriate if, "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine dispute as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c); Fed. R. Bankr. P. 7056. The moving party bears the burden of proof in establishing that there is no genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986). Procedurally, a party seeking summary judgment must make a prima facie case by showing: 1) the apparent absence of any genuine dispute of material fact; and 2) movant's entitlement to judgment as a matter of law on the basis of undisputed facts. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).

The moving party has the initial burden of establishing that there is an absence of any genuine issue of material fact. *Celotex Corp.*, 477 U.S. at 323; *Anderson*, 477 U.S. at 248. Once the moving party has satisfied this burden of proof, the nonmoving party must set forth specific facts showing that there is a genuine issue for trial. Fed. R. Civ. P. 56(e); *Celotex Corp.*, 477 U.S. at 325. The court is required to view the facts and draw reasonable inferences in the light most favorable to the nonmoving party. *Shaw v. Stroud*, 13 F.3d 791, 798 (4th Cir. 1994). However, the existence of a factual dispute is material - thereby precluding summary judgment - only if the disputed fact is determinative of the outcome under applicable law. *Id.*; *accord In re Crystal Apparel, Inc.*, 220 B.R. 816, 828 (Bankr. S.D.N.Y. 1998) ("A fact is material only if it affects the results of the proceeding and a fact is in dispute only when the opposing party submits evidence such that a trial would be required to resolve the difference"). A genuine issue of material fact exists only if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson*, 477 U.S. at 248 (1986). The court's role is not "to weigh the evidence and determine the truth of the matter [but to] determine whether there is a need for a trial." *Anderson,* 477 U.S. at 249-50. If no genuine issue of material fact exists, the court has a duty to prevent claims and defenses not supported in fact from proceeding to trial. *Celotex Corp.*, 477 U.S. at 317, 323-24.

## II.  BACKGROUND

On April 4, 2006, Mr. Hixson borrowed $106,000.00 from Calusa Investments, LLC ("Calusa"), secured by his principal residence at 225 N. 10th St., Weirton, WV 26062.  At the closing of Mr. Hixson's loan, he received a copy of all the documents he executed at closing,

2

including the deed of trust securing the loan.  Among the closing costs, Mr. Hixson was charged $475.00 by USA Settlements, LLC, for a title examination and other services.

On April 28, 2006, HSBC purchased Mr. Hixson's loan from Calusa as part of the June 7, 2002 Bulk Continuing Loan Purchase Agreement and Flow Loan Purchase Agreement between Calusa and HSBC.  Although Calusa originated the loan with Mr. Hixson, HSBC is the proper party to this litigation because it purchased Mr. Hixson's loan from Calusa as evidenced by the loan purchase agreements attached as Exhibit 3 to Mr. Hixson's motion for summary judgment between Household Financial Services, Inc., n/k/a HSBC, and Calusa.

### III.  DISCUSSION

Mr. Hixson asserts that he is entitled to summary judgment on his four-count complaint based on Calusa's imposition of illegal fees, failure to give him a copy of all signed documents executed at closing, unauthorized alteration of the deed of trust, and making a loan in excess of the fair market value of the property, all of which are alleged to constitute willful violations of the Act. HSBC asserts it is entitled to summary judgment because Mr. Hixson does not have standing to bring his claim, HSBC is a "holder in due course" of Mr. Hixson's note and deed of trust, the Bankruptcy Code's anti-modification provision of Chapter 13 precludes the relief sought by Mr. Hixson, the Act is preempted by the Bankruptcy Code, and this court cannot declare Mr. Hixson's note and deed of trust void.

**A.    Mr. Hixson's Motion for Summary Judgment**

Mr. Hixson asserts he is entitled to summary judgment on his four-count complaint because his loan was originated in willful violation of the Act.  HSBC contends that Mr. Hixson lacks standing to bring his claim, and the loan was not originated in willful violation of the act, and any such violation was the result of a bona fide error.

**1.  Hixson's Standing to Bring this Cause of Action**

HSBC asserts that Mr. Hixson is not entitled to summary judgment based on Mr. Hixson's lack of standing to bring this cause of action.  Mr. Hixson asserts that this pre-petition cause of action is property of his bankruptcy estate, but that he has an independent right to pursue such claims under *Wissman v. Pittsburgh Nat. Bank*, 942 F.2d 867 (4th Cir. 1991), because the claim was property of his bankruptcy estate in which he has an exemptable interest.

Mr. Hixson does have an independent right to pursue a cause of action that is property of the

estate to the extent that he used his available exemptions to exempt at least a portion of the potential recovery. *Wissman*, 942 F.2d at 872. Here, however, Mr. Hixson did not exempt his cause of action, but, because exemptions can be amended at any time, Mr. Hixson may amend his exemptions to exempt, to the extent possible, any potential recovery that may result from this cause of action. In that regard, the Chapter 13 Trustee in Mr. Hixson's case is aware of his cause of action against HSBC and has not sought to intervene or otherwise object to Mr. Hixson pursuing his claim. In fact, with the consent of the Chapter 13 Trustee, a confirmation hearing in this case has been put off pending resolution of this adversary proceeding. Thus, the court will afford Mr. Hixson 14 days from the entry of this memorandum opinion to file amended schedules, as necessary.[1] In the absence of a timely amendment, particularly of a claim of exemption, the court will dismiss this case.

**2. Willful violation of the Act, W.Va. Code § 31-17-1, *et seq.***

Mr. Hixson asserts that his loan was originated in willful violation of the Act, because: (1) he was charged unauthorized fees; (2) he did not receive a copy of every signed document executed by him at the closing; (3) the deed of trust given to Mr. Hixson is different than the deed of trust recorded with the Clerk of the County Commission of Hancock County, West Virginia; and (4) the loan was made in an amount, that when combined with all other loans secured by the property, exceeded the fair market value of the property.

HSBC asserts it did not violate the Act on the grounds that: (1) that the exhibits attached to Debtor's motion for summary judgment do not eliminate any genuine dispute as to any material fact regarding whether HSBC willfully violated W. Va. Code § 31-17-8(g); (2) that W. Va. Code § 31-17-8(j)(6) does not require a borrower to receive a signed copy of every document executed by the borrower at closing, but only requires the borrower be provided an unsigned copy of the documents executed; (3) that attorney Rock Wilson was not substituted for Mountain State Land Title Company ("Mountain State") as the trustee of Mr. Hixson's deed of trust, because Mountain State's name was not crossed out or deleted from the deed of trust; and (4) that Mr. Hixson has presented no admissible evidence in support of his motion for summary judgment that his loan was originated in

---

[1]In a similar vein, Mr. Hixson is free to move to amend his complaint by adding the Chapter 13 Trustee as a party plaintiff. However, the court at this time is not requiring that Mr. Hixson do so, or establishing a deadline by which such amendment must be accomplished.

4

excess of the fair market value in violation of W. Va. Code § 31-17-8(m)(8).

### i. Count I - Violation of W. Va. Code § 31-17-8(g).

Mr. Hixson asserts that Calusa violated § 31-17-8(g) by requiring him to pay $475.00 to USA Settlements for a title examination and other services. Mr. Hixson states that the $475.00 charge violated § 31-17-8(g), because USA Settlements is an entity related to Calusa. Mr. Hixson states that the two entities are related because of common membership and a common manager, David B. Shumway.

W.Va. Code § 31-17-8(g) provides, in pertinent part, that, "Except for fees for services provided by unrelated third parties for appraisals, inspections, title searches and credit reports, no application fee may be allowed whether or not the mortgage loan is consummated."

HSBC asserts that Mr. Hixson has failed to prove on summary judgment that USA Settlements was so related to Calusa as to eliminate any genuine dispute as to a material fact regarding the propriety of the $475.00 in fees. The court agrees for two reasons.

First, the existence of joint stockholders in Calusa and USA Settlements, standing alone, is insufficient to establish that the two entities are related. *See Southern Electrical Supply Co. v. Raleigh County National Bank*, 173 W.Va. 780, 788 (1984) ("The law presumes that two separately incorporated business are separate entities and that corporations are separate from their shareholders.").

Second, the record on summary judgment merely demonstrates that David B. Shumway was a manager of Calusa as of January 31, 2006, and on January 22, 2007; Hixson's documents fail to demonstrate Mr. Shumway's role between those dates. Calusa closed Mr. Hixson's loan on April 4, 2006. Drawing all inferences in favor of HSBC as the non-movant on summary judgment, the court cannot conclude that Mr. Shumway was the manager of Calusa when Mr. Hixson's loan was closed. Likewise, although Mr. Shumway's name is listed as a member and manager of USA Settlements, nothing in the record currently before the court establishes the nature of Mr. Shumway's relationship to USA Settlements on April 4, 2006.

Therefore, the court, in drawing reasonable inferences in favor of HSBC, finds the record fails to place beyond dispute that Calusa and USA Settlements were related entities for purposes of violating § 31-17-8(g), and will deny Mr. Hixson's motion for summary judgment on Count I of his complaint.

### ii.  Counts II and III - Violation of W.Va. Code § 31-17-8(j)(6).

Mr. Hixson asserts that Calusa violated the Act by failing to provide him with a signed copy of each document executed by him at closing, including an exact copy of the deed of trust executed at closing.  HSBC asserts compliance with the Act, arguing that all the Act requires is that a borrower receive copies of the documents that a borrower signs at a loan closing, not copies containing the borrower's signature.[2]

The relevant statutory language provides: "No instrument evidencing or securing a primary or subordinate mortgage loan shall contain: (6) Blank or blanks to be filled in after the consummation of the loan.  A borrower must be given a copy of every signed document executed by the borrower at the time of closing."  W.Va. Code § 31-17-8(j).

Exhibit 4 contains the documents provided to Mr. Hixson at the closing of his loan.  The documents do not bear Mr. Hixson's signature.  There is no factual dispute in that regard.

Section 31-17-8(j)(6) plainly requires a borrower to receive a signed copy of every document executed by the borrower at the loan closing.  This means the borrower must, as a matter of law, receive a copy containing the borrower's signature — not a copy of the unexecuted document.  Had the West Virginia legislature intended to require borrowers to only receive unsigned copies of each document executed by the borrower at closing, the adjective "signed" would have been left out of the statute.  HSBC's interpretation of the statute renders the word "signed" superfluous, and will not be adopted by the court.  Moreover, HSBC's interpretation eviscerates the first sentence of § 31-17-8(j)(6), which provides that financial instruments evidencing or securing a mortgage loan must not contain, "Blank or blanks to be filled in after the consummation of the loan."  A plain meaning reading of § 31-17-17-8(j)(6) clearly yields an interpretation that requires copies of the originals

---

[2]In Count III of his motion for summary judgment, Mr. Hixson references an issue regarding the alleged substitution of the trustee under Mr. Hixson's deed of trust, but does not allege any independent basis for summary judgment based on substitution of the trustee under the deed of trust.  Instead, Mr. Hixson bases his motion for summary judgment as it relates to Count III on a violation of § 31-17-8(j)(6) — the same provision that is the basis of Count II.  Although HSBC responded to Count III based on Mr. Hixson's assertion that the trustee under his deed of trust was somehow improperly substituted, because the requested relief is based on § 31-17-8(j)(6), the court will only address the alleged violation of that provision, and the court will consider each of the parties' arguments as articulated on Count II as likewise relating to Count III.

bearing the signature of the borrower must be provided; not merely copies of the documents presented to the borrower for his signature.

Therefore, the court will grant Mr. Hixson's motion for summary judgment on Counts II and III of Mr. Hixson's complaint, but only as to whether there was a violation of the Act and not whether that violation was willful.

### iii.  Count IV - Violation of W.Va. Code § 31-17-8(m)(8).

Mr. Hixson, relying on his own estimation of his property's value, asserts in Count IV that Calusa violated § 31-17-8(m)(8) by making a loan to him for $106,000.00, which he contends is in excess of the fair market value of his property on the date that the loan was made.  In support of his contention, Mr. Hixson filed a sworn affidavit in which he contends, among other things, that as of the date of the loan transaction with Calusa, his property was worth no more than $75,000.00.  Mr. Hixson further offers that, as the owner of the property, his opinion as to its value is admissible and, in support of that proposition, offers the case of *Leftwich v. Wesco Corp.*, 146 W.Va. 196 (1961). HSBC contends that Mr. Hixson's opinion is inadmissible, his reliance on *Leftwich* is inappropriate as that case is factually distinguishable from this case, and that Calusa relied upon a bona fide written appraisal establishing the value of the property at the time of the loan at $109,582.00.  In turn, Mr. Hixson argues that the document offered as an appraisal by HSBC is inadmissible, and, as such, Mr. Hixson's evidence of value has not been rebutted.  Mr. Hixson is correct.

First, it is a well-established proposition that under Fed. R. Evid. 701, an owner of property — including real estate — is competent to state an opinion as to the property's value based on personal familiarity with the property; although it is not a foregone conclusion that such testimony will actually be admitted at trial, or given persuasive weight.  Hon. Barry Russell, *Bankruptcy Evidence Manual*, pp. 742-43, § 701:2 (West's Bankruptcy Series, 2010-2011 ed.).  But, to be clear, opinion evidence as to value by the owner of property is admissible as a general proposition.  Thus, Mr. Hixson's supporting affidavit regarding his opinion as to value would be admissible and is accepted by the court in accordance with Fed. R. Civ. P. 56(c)(4), made applicable to this proceeding by Fed. R. Bankr. P. 7056.

Second, in contrast to Mr. Hixson's affidavit, the opposing affidavit regarding the property's value offered by HSBC is clearly inadmissible, and will not be accepted by this court under Rule 56(c)(4).  In fact, the court finds that it is offered under circumstances that impel the invocation of

7

Rule 56(h) for proceedings to determine if the affidavit was submitted in bad faith.

The affidavit of Charles A. Schmitt was offered by HSBC as part of its opposition to Mr. Hixson's motion for summary judgment and in support of its own such motion. Mr. Schmitt declares himself to be a Vice President for HSBC Mortgage Services, Inc., and that in that role he reviewed the loan file regarding the loan extended to Mr. Hixson by Calusa. Furthermore, at paragraph 7 of his affidavit, Mr. Schmitt declares under penalty of perjury that, "Attached hereto as Exhibit B is a true and accurate copy of the Appraisal for Mr. Hixson's loan, which was kept in the course of regularly conducted business in Mr. Hixson's loan file."

A close examination of the so-called "Appraisal" avowed to by Mr. Schmitt reveals that it is patently not an appraisal. The one-page document offered by HSBC as an "Appraisal" is by its very terms — contained in fine print — not warranted or represented to "constitute an appraisal and has not been prepared by a certified or licensed appraiser." Offering such a document as an appraisal is blatantly inconsistent with its very terms, and preposterous on its face. A one-page computer printout not attributed to any individual, nor signed by anyone who can be held accountable for the conclusion offered, hardly constitutes an appraisal that this or any court would find acceptable, let alone admissible in evidence as an appraisal.

At most, the document offered by HSBC might be admissible under the hearsay exceptionn allowed for record of a regularly conducted activity. Fed. R. Evid. 803(6). But it most certainly would not be admitted as opinion evidence under Fed. R. Evid. 702. Unlike Mr. Hixson who, as the owner of the property, can offer his lay opinion as to its value, HSBC is provided no such opportunity. If it wishes to provide an opinion as to value, it must offer evidence that is admissible as expert testimony pursuant to Fed. R. Evid. 702, or offer some alternative method and authority for its admissibility — which it has not. This court is no stranger to appraisal reports and testimony offered by certified and licensed appraisers who have been duly qualified to express expert opinions as to value in accordance with the standards for the admissibility of such evidence under Fed. R. Evid. 702. While the purported "Appraisal" offered by HSBC might be admissible under Fed. R. Evid. 803(6) for purposes other than masquerading as an appraisal, it is clearly not admissible as an appraisal. More importantly, at trial, the court would expect to hear testimony from an appraiser, not merely to receive into evidence his or her written report.

Thus, it is clear to the court that HSBC has offered no facts that would be admissible in

evidence to support its argument regarding value.  In that regard, it has pointed to no other evidence in the record besides the "Appraisal" from which its postulation as to value can be derived.  It is left with relying upon a bald assertion that it did not violate § 31-17-8(m)(8) by lending more money than the property was worth.  Under normal circumstances, the court would be highly inclined to award summary judgment to the moving party in light of such a failure.  However, given the circumstances of this case, the court finds that it would be premature to award Mr. Hixson summary judgment on his cause of action under § 31-17-8(m)(8).

While admissible, Mr. Hixson's opinion of value is lightly based and unplumbed.  At trial, his opinion could be tested by the rigors of cross-examination.  As noted earlier, although lay opinion as to property value is generally admissible, whether it is actually admissible and the weight to be attributed to it is highly variable and dependent on the circumstances of each case.  Thus, while the court has found Mr. Hixson's affidavit to be sufficient, in and of itself, to meet the criteria required to support summary judgment in accordance with Rule 56(c)(4), it is not persuaded that it is sufficient to carry the day on the issue of value.  Rather, the court believes that the dispute should be preserved for fuller consideration at trial.  Therefore, the court denies Mr. Hixson summary judgment regarding Count IV of his complaint.

That, however, does not end the court's treatment of this issue.  As noted earlier, the court is impelled to investigate further the submission and use of Mr. Schmitt's affidavit under circumstances that suggest bad faith within the meaning of Fed. R. Civ. P. 56(h).  Without prejudging the outcome of such an inquiry, the court believes that there is sufficient indicia to believe that the affidavit may have falsely represented the character and nature of the purported "Appraisal," and, further, that argument that it constituted an appraisal — that term being deployed several times by counsel for HSBC in his briefing — may have been in bad faith considering the explicit terms of the document itself.[3]

Therefore, by separate order, this court will set proceedings to examine the bad faith issues implicated by Mr. Schmitt's affidavit under the provisions of Rule 56(h).

**iv.  Willfulness**

---

[3]Counsel is reminded of his duty of candor to the court.  *Shaffer Equipment Co. v. United States of America*, 11 F.3d 450 (4th Cir. 1993).

9

Mr. Hixson seeks cancellation of the April 4, 2006 loan made by Calusa and the related deed of trust. To obtain that relief, Mr. Hixson must demonstrate that Calusa willfully violated the Act. W.Va. Code § 31-17-17(a). Mr. Hixson has demonstrated on summary judgment a violation of § 31-17-8 under Counts II and III of the complaint insofar as Calusa failed to provide him with signed copies of the documents executed by Mr. Hixson at closing, but not willfulness.

Mr. Hixson asserts that the simplest proof of willfulness is that the same behavior recurs with regularity. Because the record on summary judgment is bare of facts establishing willfulness — in terms of Calusa's behavior in other cases — the court will deny summary judgment as to whether Calusa willfully violated the Act.[4]

### v. Cancellation of the loan and the deed of trust

Mr. Hixson asserts that cancellation of the loan owed to HSBC is the appropriate remedy if this court finds that Calusa willfully violated the Act. Mr. Hixson further asserts that cancellation of the loan naturally leads to the elimination of the deed of trust executed in favor of Calusa. HSBC asserts that even if cancellation of the loan is the appropriate remedy for a willful violation of the Act, nothing in the Act permits the cancellation of the loan and the deed of trust.

The relevant portion of the Act provides: "If any primary or subordinate mortgage loan is made in willful violation of the provisions of this article, except as a result of a bona fide error, such loan may be cancelled by a court of competent jurisdiction." W.Va. Code § 31-17-17(a).

Here, because Mr. Hixson has not yet established a willful violation under § 31-17-17(a),[5] and that matter will be taken up at trial, the court will likewise reserve for trial a determination of the appropriate remedy available to Mr. Hixson. Also, given the paucity of the authority on the issue, the court will likely benefit from post-trial briefing if Mr. Hixson prevails.

---

[4]Mr. Hixson sought to establish willfulness through the introduction of Exhibits 10-13, which are loan documents executed between Calusa and other borrowers who are not a party to this proceeding. After conducting a telephonic hearing on HSBC's March 7, 2011 motion to strike the exhibits, the court granted HSBC's motion to strike the exhibits from the record.

Likewise, to the extent Mr. Hixson's Motion to Add Recently Acquired Information remains outstanding, it will be denied.

[5]Section 31-17-17(c) provides further relief for a violation of the Act in the form of damages, but it is clear to the court that Mr. Hixson is not proceeding under that provision and has offered no evidence of damages.

Therefore, a legal issue remains for determination as to what the appropriate remedy under the Act is in this proceeding should Mr. Hixson prove willfulness, and, thus, the court will deny HSBC's motion for summary judgment as it relates to the remedy available to Mr. Hixson.

**B.     HSBC's Motion for Summary Judgment**

HSBC asserts that it is entitled to summary judgment because: (1) it is a "holder in due course," as defined in West Virginia, and is therefore not liable for any alleged violations of the Act relating to the origination of Mr. Hixson's loan; (2) section 1322(b)(2) of the Bankruptcy Code prohibits modification by a Chapter 13 debtor of mortgage a lender's rights, and, thus, preempts the Act; and (3) the remedial provision of the Act does not permit the court to afford the relief requested by Mr. Hixson.

**1. The Holder in Due Course Defense**

HSBC asserts that, as a holder in due course, it is not liable to Mr. Hixson for any alleged deficiencies in the loan origination.  Mr. Hixson asserts, among other things, that HSBC is not a "holder in due course," because the absence of appraisals in the transfer of the loan package put HSBC on notice that the paper it purchased from Calusa was defective.

In West Virginia, "holder in due course" means the holder of an instrument if: "(2) the holder took the instrument (i) for value, (ii) in good faith, . . . and (vi) without notice that any party has a defense or claim in recoupment described in Section 3-305(a)."  W. Va. Code § 46-3-302(a).  The only defenses that may be asserted against a holder in due course are: "(i) infancy of the obligor, (ii) duress, lack of legal capacity, or illegality of the transaction which, under other law, nullifies the obligation of the obligor, (iii) fraud that induced the obligor to sign the instrument . . . , or (iv) discharge of the obligor in [bankruptcy]."  W.Va. Code § 46-3-305(b).  HSBC's alleged status as a holder in due course would eliminate any right to relief by Mr. Hixson because he has not asserted any of the available defenses against a holder in due course regarding enforcement of his note.

On April 28, 2006, HSBC purchased Mr. Hixson's loan from Calusa as part of the Bulk Continuing Loan Purchase Agreement and Flow Loan Purchase Agreement between Calusa and HSBC.  Section 4B, paragraph 13, of the Flow Loan Purchase Agreement warrants that the "[s]eller has delivered to Buyer an appraisal of the mortgaged property signed prior to the approval of the Mortgage application . . . ."  Charles Schmitt, Assistant Vice President for HSBC, stated in his

11

affidavit that "[e]xhibit B is a true and accurate copy of the Appraisal for Mr. Hixon's loan, which was kept in the course of regularly conducted business . . . ."

The record before the court, however, does not contain facts showing an appraisal of the kind described in subparagraph 13 of Section 4B of the June 7, 2002 Flow Loan Purchase Agreement conducted in connection with Mr. Hixson's loan, which requires that, "[t]he appraisal shall be completed in compliance with the Uniform Standards of Professional Appraisal Practice . . . ." The court's findings in that regard were set forth earlier and will not be repeated here.

The Flow Loan Purchase Agreement requires the appraisal be "completed in compliance with the Uniform Standards of Professional Appraisal Practice . . . ." No assertion has been made by either party regarding whether what purports to be the appraisal completed in connection with Mr. Hixson's loan comports with the requirements of the Flow Loan Purchase Agreement, but it is abundantly apparent to the court that the computer-generated printout estimating value — without any visual inspection of the property — is not enough to qualify as an appraisal under the Uniform Standards of Professional Appraisal Practice. In fact, as noted elsewhere, the computer printout explicitly states that it "does not constitute an appraisal."[6]

Mr. Hixson alleges in his complaint, among other things, that Calusa wilfully violated § 31-17-8(m)(4) and (8) of the Act when it made the subject loan to Mr. Hixson in excess of the fair market value of the property and in an amount, when combined with all other loans secured by the same property, exceeded the fair market value of the property. Section 31-17-8(m)(8) provides, "a broker or lender may rely upon a bona fide written appraisal of the property." Thus, the existence of a bona fide written appraisal is central to lender liability under that provision.[7] Not only might it be critical to a determination of liability under § 31-17-8(m)(8); it is essential to HSBC's "holder in due course" defense. Because the absence of a bone fide appraisal could open HSBC to liability

---

[6]As previously noted in this memorandum, Charles Schmitt, Assistant Vice President for HSBC, stated in his affidavit that "[e]xhibit B is a true and accurate copy of the Appraisal for Mr. Hixon's loan, which was kept in the course of regularly conducted business . . . ." It is clear from a review of the exhibit, that such is not an appraisal, and, in fact, expressly refutes Mr. Schmitt's affidavit.

[7]Although not the exclusive means of defense to a lender, an appraisal meeting the criteria set forth in § 31-17-8(m)(8) provides a "safe harbor" of sorts for the lender.

in West Virginia, and, because Calusa warranted that an appraisal was completed and signed before approval of the Mortgage application, the absence of such appraisal precludes HSBC from successfully availing itself of the "holder in due course" defense.

Therefore, the court will deny HSBC's motion for summary judgment based on the "holder in due course" defense.

### 2. Preemption of W. Va. Code § 31-17-17(a).

HSBC asserts that Mr. Hixson's cause of action under W. Va. Code § 31-17-17(a) is preempted by 11 U.S.C. § 1322(b)(2). In that regard, HSBC contends that it is entitled to summary judgment because the Bankruptcy Code prohibits modification of a secured lender's rights in real property that is the debtor's principal residence, and, thus, Mr. Hixson cannot be afforded the relief requested of this court.

In the case of *In re Johnson*, 362 B.R. 730 (Bankr.N.D.W. Va. 2007), this court held that the factors to be considered when determining whether a state law, which is not a bankruptcy law, is preempted by the Bankruptcy Code, are: (1) whether the state law is expressly preempted by Congress; (2) whether Congress intended to occupy the entire field so as to preempt state laws that might be applicable in that area; (3) whether the state law conflicts with the federal statutes such that the state law cannot be given effect; and (4) whether the state law stands as an obstacle to the accomplishment and execution of the full purposes and objectives of Congress. *Johnson*, 362 B.R. at 735.

Section 1322(b)(2) of the Bankruptcy Code prevents modification of a loan secured only by a security interest in a debtor's principal residence. In West Virginia, a mortgage loan made in willful violation of the West Virginia Residential Mortgage Lender, Broker, and Servicer Act may be cancelled by a court of competent jurisdiction. W. Va. Code § 31-17-17(a).

Congress designed § 1322(b)(2) of the Bankruptcy Code to encourage lenders to engage in mortgage lending. *See Nobelman v. American Sav. Bank*, 508 U.S. 324, 332 (1993) (Stevens, J., concurring) (stating that § 1322(b)(2)'s "legislative history indicat[es] that favorable treatment of residential mortgages was intended to encourage the flow of capital into the home lending market"). Section 1322(b)(2) accomplishes this purpose by ensuring that secured lenders retain their rights in collateral retained by Chapter 13 debtors. Nothing in § 1322(b)(2) permits mortgage lenders to violate state laws promulgated to ensure that the lending practices encouraged by § 1322(b)(2) are

13

done in good faith and not in any nefarious manner.

Here, the *Johnston* factors used by this court in determining whether a non-bankruptcy state law is preempted by the Bankruptcy Code weigh against a finding of preemption.

First, this court is not aware of — and HSBC has not provided — any authority supporting HSBC's contention that Congress intended to expressly preempt the Act with the Bankruptcy Code. Second, neither § 1322(b)(2), nor the Bankruptcy Code, are intended to occupy the entire field of mortgage lending. Third, the Act does not conflict with § 1322(b)(2) of the Bankruptcy Code such that the Act cannot be given effect. As discussed above, § 1322(b)(2) was promulgated to encourage mortgage lending, and the Act only attempts to ensure that mortgage lending is done in good faith and in a fair manner. There is no evidence that Congress intended to encourage such lending without regulation. Lastly, the state law does not stand as an obstacle to the accomplishment and execution of the full purposes and objectives of Congress. Congress enacted § 1322(b)(2) of the Bankruptcy Code to encourage mortgage lending, and nothing in the Act stands as an obstacle to mortgage lenders conducting their business in a fair and reasonable manner.

Therefore, HSBC is not entitled to summary judgment based on preemption.[8]

### IV. CONCLUSION

For the reasons stated herein, Mr. Hixson's motion for summary judgment is granted, in part, and denied, in part, and HSBC's motion for summary judgment is denied.

---

[8]HSBC cites, among other cases, *Lomax v. Bank of America, N.A.*, 435 B.R. 362 (N.D.W.Va. 2010) and *Frye v. Bank of America, N.A.*, Civil Action No. 3:10-CV-47, 2010 WL 3244879 (N.D.W.Va. Aug. 16, 2010), for the proposition that the Act is preempted by the Bankruptcy Code. Those cases, however, dealt with state law causes of action under the West Virginia Consumer Credit Protection Act ("WVCCPA") that are preempted by the National Bank Act and the Bankruptcy Code. Because Mr. Hixson's cause of action is for willful violations of the Act, this court is persuaded that *Lomax* and *Frye* are distinguishable from this case and thus are inapposite.